Curia, per Wardlaw, J.
The prosecutor’s claim to one-half of the fine is noted upon the case of the State v. Baldwin. That case was decided upon the authority of Van Evour’s case; and the latter case, relating to the penalty.for retailing without license, was overruled by the Act of 1825, which, in the case-of The State v. Lesterjette, was held to have taken away the informer’s right incases of retailing,.by appropriation of all fines under that Act to the Commissioners of Roads, without saving the rights of informers. .The Act of 1827, which, gave other fines to the Commissioners of Public Buildings, does except, the. rights of ' informers. The Acts of 1834, relative to trading .with slaves, make no mention of informers, and they, as well as the Act of 1817, contemplate fines at the discretion-of the Court, and not such exact forfeitures as usually go to informers. Since these latter Acts and Lesterjette’s case, there seems to have been a-general impression that the informer, in-a case o.f trading., with a slave, is not entitled to any share of the penalty, as a„ppears by the frequent practice of admitting such -informer as a witness without release.
Admitting, however, that the prosecutor here is entitled to one-half of the fine that may be collected from Linton, he has no legal right to any share of the money that has arisen; from the recognizance. A recognizance may be estreated, and full payment of its penalty he exacted, and yet the convict (who or whose sureties have paid for breach of its condition,) obtain thereby no exemption from fine. The recognizance may be for a large sum, and the fine for a small one. If it should be made to appear that, from a recognizance such as this, adequate means have come to the hands of public functionaries, and that the-defendant has escaped the imposition Or collection of a fine, there might be a strong case for an appeal, by the informer, to those func *90 tionaries, or some other public authority, that out of the meang thus produced by his information, iio should be paid a sum equal or proportionate to the share which he ought to have received of the fine. But such an appeal would be addressed to a just discretion, and would claim, not a right such as a Court could enforce, but the acknowledgment of an imperfect obligation resting upon equitable considerations.
The sealed sentence, which was left by the Judge who tried the case against Linton, was only a recommendation to guide the discretion of a subsequent Judge, who might be required to pass the sentence. It was conformable to a very usual and proper practice, which has grown out of the relation of the Circuit Judges, and which was sanctioned by the Act of 1832, in the directions there given for a course to be pursued, when an appeal is taken from a conviction for a misdemeanor. That Act shows that in the case contemplated by it, the sentence (as the writing is called) does not become the judgment of the Court until it has been passed on the defendant in Court. In other criminal cases, it is still more plain that judgment must be rendered, or sentence passed, publicly and in open Court. It is the act of the Court, and not of the Judge, to be done only in term time— and is not done until it is promulgated so as to pass into the registry of the proceedings of the Court.
The real question in this case, then, is, whether the last Circuit Judge was so wrong when, in his discretion, he refused to pass the sentence, at the instance of the prosecutor, in the absence of Linton, the convict, that this Court shall now order that to be done at the next term which he refused to do. It will be observed that not only did the recommendation contained-in the written sentence suggest imprisonment as well as fine, but that, by the Act of 1817, under which Linton was convicted, imprisonment of not less than one month is imperatively required.
The sentence is an entirety, which cannot be so divided that, at one term, judgment may be rendered of a fine, and, at another, of imprisonment. Now, ought the sentence to have been passed? It would be much harder to show that it could have been lawfully done, under any circumstances, than that it ought' not to have been done, when it was not moved for by the prosecuting officer of the State. A full persuasion of the wholesome example and effective punishment which result from convicted offenders appearing publicly to receive sentence, and with it the animadversion of the Court, makes Circuit Judges rigorous in insisting upon this course in all ordinary cases. Where it is clear that the punishment will be only pecuniary, there are precedents for the personal appearance of the defendant being dispensed *91 with by previous rule, gi anted by the Court in consideration of some unusual circumstances, and on condition that clerk in Court — (perhaps counsel would be here accepted instead) — undertakes to answer the fine ; for a fine imposed in the absence of the defendant may be collected by well-known process. But it has been positively asserted, by great Judges, that, where any corporal punishment is to -be inflicted, it is absolutely necessary that the defendant should appear personally before the Court when the sentence is pronounced, “for there is no process to take a man and put him in the pillary,” or in jail for punishment.
This Court will not now decide that no, case can arise, wherein, in some form to be devised, and at the instance of the State, sentence of fine and imprisonment should be passed in the absence of the defendant, in order that the fine, at least, might be enforced ; nor' will it interfere with the questions concerning costs which have been suggested : but it is well satisfied that the discretion of the Circuit Judge was well exercised, and that a long pause and very extraordinary circumstances should have preceded his doing what the prosecutor desired.
The motion is dismissed.
Evans, Frost, and Withers, JJ., concurred.

Motion refused.